**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION**

PAUL D. KING,

        Plaintiff,

                                  **Civil Action 2:17-cv-815**
                                  **Magistrate Judge Chelsey M. Vascura**

    v.

COMMISSIONER OF SOCIAL SECURITY,

        Defendant.

<u>**OPINION AND ORDER**</u>

Plaintiff, Paul D. King, brings this action under 42 U.S.C. § 405(g) for review of a final

decision of the Commissioner of Social Security ("Commissioner") denying his

application for supplemental security income.   This matter is before the Court for consideration

of Plaintiff's Statement of Errors (ECF No. 14), the Commissioner's Memorandum in

Opposition (ECF No. 17), and the administrative record (ECF No. 11).   Plaintiff did not file a

reply brief.   For the reasons that follow, the Court **OVERRULES** Plaintiff's Statement of Errors

and **AFFIRMS** the Commissioner's decision.

## I.      BACKGROUND

Plaintiff protectively filed his application for supplemental security income on March 20,

2014, alleging a disability onset of February 14, 2009.   Plaintiff's application was denied initially

on May 9, 2014, and upon reconsideration on October 7, 2014.   Plaintiff sought a hearing before

an administrative law judge.   Administrative Law Judge Jeffrey Hartranft ("ALJ") held a hearing

on May 20, 2016, at which Plaintiff, represented by counsel, appeared and testified.   Daisy

Wilson, Plaintiff's long-term girlfriend, and Michael A. Klein, a vocational expert ("VE"), also

appeared and testified at the hearing. On June 27, 2016, the ALJ issued a decision finding that Plaintiff was not disabled within the meaning of the Social Security Act. On July 21, 2017, the Appeals Council denied Plaintiff's request for review and adopted the ALJ's decision as the Commissioner's final decision. Plaintiff then timely commenced the instant action.

In his Statement of Errors, Plaintiff advances eight contentions of error. On review, however, the Court concludes that Plaintiff's arguments are properly characterized as raising four issues. First, Plaintiff asserts that the ALJ erred in his evaluation and consideration of the medical opinion evidence in the record. Specifically, Plaintiff contends that the ALJ's assignment of no weight to Plaintiff's therapist, Thomas Miller, LPCC, and "some weight" to the state agency psychologists was erroneous and resulted in: (1) unsupported findings regarding Plaintiff's activities of daily living, (2) an RFC that is not supported by substantial evidence. Second, Plaintiff contends that the ALJ erred by failing to include paranoid schizophrenia as a severe impairment. Third, Plaintiff contends that the ALJ failed to develop the record with respect to his cerebral cyst and associated limitations, thereby depriving him of a full and fair hearing. Lastly, Plaintiff contends that the ALJ's reliance on the testimony of the VE in determining he could perform other work was in error due to flaws in the hypothetical question.

## II. HEARING TESTIMONY

### A. Plaintiff's Testimony

Plaintiff testified at the administrative hearing that he lives in a trailer with his girlfriend, Daisy Wilson, who he has dated for 20 years. (R. at 56-57, 71.) He stated that he feels that he cannot work due to back and leg pain, but that "the most important thing" is that he is a paranoid schizophrenic. (R. at 62.) He testified further that he cannot be around a lot of people, and that he does not like to go out, not even to stores. (*Id.*) When asked about a typical day, Plaintiff

testified that he after he gets up, he drinks a cup of coffee and sits and watches TV.  (R. at 68-69.)  He has no hobbies and does nothing other than watch TV for enjoyment.  (*Id*.)

Plaintiff then testified that he finds counseling and medication helpful with his mental impairments.  (R. at 69.)  He described the positive difference he feels when he takes his medication, as without his medication, he cannot leave his room, but when he takes his medication, he can go out in his front room.  (R. at 70.)

**B.** **Daisy Wilson's Testimony**

Daisy Wilson, Plaintiff's girlfriend, also testified at the administrative hearing.  She testified that, "[Plaintiff] has a lot of problems," and is very depressed.  (R. at 76.)  She explained that Plaintiff does not like to be in crowds, hears voices, and believes people are against him.  (*Id*.)  Ms. Wilson testified that Plaintiff takes medication for schizophrenia, Haldol, which makes him sleep.  (R. at 80.)  She also stated, however, that Plaintiff forgets to take his medication, starts to hear voices, and then tries to pick a fight with her because of the voices.  (R. at 78-79.)

**C.** **Vocational Expert Testimony**

The VE testified at the administrative hearing that Plaintiff's past jobs include janitor, a medium, semi-skilled job; and hand packer, a medium, unskilled job that Plaintiff performed at a light level.  (R. at 85.)  The VE testified that a hypothetical individual with Plaintiff's vocational profile and the residual functional capacity ("RFC") the ALJ ultimately assessed could perform approximately 340,000 light, unskilled jobs in the national economy, such as a racker in a bakery and a cleaner.  (R. at 87.)  The VE further opined that if the hypothetical individual were to have two unexcused absences a month or be off task more than 10% of the workday, it would preclude competitive employment.  (R. at 88.)

# III. MEDICAL RECORDS

## A. Sivaram Kollengode, M.D.

On January 7, 2013, Plaintiff visited Dr. Sivaram Kollengode, M.D., and reported that his depression medication, Fluoxetine, was working fairly well with no side effects, but that his stress level at that time was "too high due to his grandma's medical issues." (R. at 301.) Plaintiff also reported that his paranoia was "much better on the Haldol." (*Id.*) On examination, Dr. Kollengode observed that there were "[n]o signs of apparent distress present," and that Plaintiff was "cheerful." (*Id.*) Dr. Kollengode continued Plaintiff's medications for headache prevention and depression. (R. at 302.)

On April 23, 2015, Plaintiff reported to Dr. Kollengode that he was seeing a psychiatrist for schizophrenia, who had started him on Klonopin for anxiety and wanted Dr. Kollengode to stop the headache medication, Floricide. (R. at 613.) Dr. Kollengode did not diagnose Plaintiff with schizophrenia and observed on examination that Plaintiff was "doing well with the SSRI." (R. at 614.) The record reflects that Plaintiff continued to see Dr. Kollengode at least through March 2016 for treatment of migraine headaches, depression, insomnia, and leg pain. (R. at 298-339, 372-82, 549-69, 608-27, 633-44.)

## B. Michael Shannon, M.D.

On September 8, 2014, Plaintiff visited Dr. Michael Shannon, M.D., a neurosurgeon, due to his headaches. (R. at 469.) Dr. Shannon noted that Plaintiff had an MRI of his brain that showed a large collection of CSF density along the cerebral on the left. (*Id.*; *see also* R. at 433.) Plaintiff reported to Dr. Shannon that he carries diagnoses of severe depression and schizophrenia. (R. at 469.) On examination, Dr. Shannon observed that Plaintiff was "awake, alert, fully oriented, with normal mental status, normal cranial nerves, normal strength, sensation,

and reflexes of all four extremities." (*Id.*) Dr. Shannon noted impressions of: large left subdural arachnoid cyst, benign probably chronic headaches, probably left sided cluster headaches, and severe depression schizophrenia. (*Id.*) Dr. Shannon recommended that Plaintiff get CT scan in three months, which ultimately showed stable large extra-axial fluid collection in the left cerebral hemisphere with associated mass effect. (R. at 411.)

A repeat CT scan of Plaintiff's brain taken on January 4, 2016, showed stable size and appearance of chronic left subdural fluid collection most consistent with chronic subdural hematoma. (R. at 631-32.)

## C.    Cambridge Counseling Center

On March 7, 2014, Plaintiff presented for mental health treatment at the Cambridge Counseling Center, with Thomas Miller, L.P.C.C. (R. at 341-57.) Plaintiff initially reported a history of witnessing several beatings of his mother by his father and that he was also beaten by his father and starved by his grandfather when growing up. (R. at 341.) Plaintiff also told Mr. Miller that he rarely leaves the house and that he hears voices. (*Id.*) Mr. Miller then diagnosed Plaintiff with panic disorder with agoraphobia, major depressive disorder, and psychotic disorder. (R. at 355.)

On March 19, 2014, Plaintiff reported to Mr. Miller,

> I am hearing voices and it is bad. I need to get help. My girlfriend might throw me out at any time. I need to be on disability because I can't read and my leg is bad and I hear voices and they are getting worse. I don't know what to do. I can't work and I have no way of paying bills and I am losing my 113 dollars a month and my medical card. I need[] help.

(R. at 365.) The record also reflects that Mr. Miller referred Plaintiff to an attorney to assist with disability. (*Id.*)

On April 30, 2014, Plaintiff discussed his lack of employment with Mr. Miller, stating that he did not know whether he should "go with BVR [Bureau of Vocational Rehabilitation] or fight for SSI." (R. at 385.)

On June 26, 2014, Plaintiff met with Daniel Lettvin, M.D. for a pharmacological management plan. (R. at 682-85.) Plaintiff reported his history of paranoid schizophrenia to Dr. Lettvin, who noted that although Plaintiff "reports past history of paranoid schizophrenia, and endorses past and current history of aud[itory] hallucinations" his self reports are "[somewhat] vague and inconsistent regarding this." (R. at 685.) Dr. Lettvin ultimately diagnosed agoraphobia with panic disorder, depressive psychosis, and psychosis not otherwise specified. (*Id.*)

On July 23, 2014, Plaintiff reported to Mr. Miller, "I become a nervous wreck when I talk to that Psychiatrist. He and Daisy want Daisy to come on the next visit. Daisy says I can't comprehend things. He asked me, when people yell at me do you get nervous? Of course I get nervous." (R. at 405.) Plaintiff also admitted that he lied to the psychiatrist, and Mr. Miller discussed the importance of telling the truth to his psychiatrist. (R. at 405.)

The record contains an undated mental residual functional capacity assessment Mr. Miller completed. Mr. Miller checked boxes in the "summary conclusions" section of the form reflecting his assessment that Plaintiff was markedly limited in his ability to work in coordination with others, to interact appropriately with the general public, to get along with co-workers or peers without distracting them or exhibiting behavioral extremes, to respond appropriately to changes in the work setting, and to travel in unfamiliar places or use public transportation. (R. at 645-46.) In the "functional capacity assessment" portion of the form, Mr. Miller indicated that his bases for the check-the-box portion was Plaintiff's self reports,

including Plaintiff's reports that he rarely leaves the house; that he suffers from anxiety, panic attacks, and severe depression; that he hears voices; and that he suffers from severe headaches possibly attributable to a mass in his brain. (R. at 648.)

On February 3, 2016, Plaintiff reported to Mr. Miller that he finds it impossible to go out into the workplace "because of [his] paranoid schizophrenia." (R. at 673.) Mr. Miller explained to Plaintiff that he had never shown any signs of schizophrenia but had demonstrated a lot of paranoia and anxiety. (*Id.*)

**D.      State Agency Evaluation**

On May 5, 2014, state agency psychologist, Leslie Rudy, Ph.D., reviewed Plaintiff's file under the medically determinable impairments of affective disorders, anxiety disorders, and borderline intellectual functioning. (R. at 146.) Dr. Rudy determined that Plaintiff would have no restrictions in activities of daily living; moderate difficulty in social functioning; moderate difficulty in maintaining concentration, persistence, or pace; and no episodes of decompensation. (R. at 147.) Dr. Rudy did not adopt the ALJ decision of January 25, 2013, explaining that Plaintiff's issues of paranoia and auditory verbal hallucinations impose additional limitations on his ability to function that were not addressed in the prior decision. (*Id.*) Dr. Rudy opined that Plaintiff is able to understand and remember at least 1-2 step tasks and that he retains the capacity to carry out 1-2 step tasks in a setting without demands for fast pace or high production. He also opined that Plaintiff should avoid work with the general public. Dr. Rudy further concluded that Plaintiff is able to interact on an occasional and superficial basis with co-workers and supervisors and that he is limited to work in a setting which has no more than infrequent change in schedule, procedures, and processes. (R. at 149-51.)

7

Bruce Goldsmith, Ph.D. reviewed Plaintiff's records upon reconsideration on September 3, 2014, and affirmed Dr. Rudy's assessment. (R. at 161-66.)

## IV. THE ADMINISTRATIVE DECISION

On June 27, 2016, the ALJ issued his decision. (R. at 33-45.) At step one of the sequential evaluation process,[1] the ALJ found that Plaintiff had not engaged in substantially gainful activity since his alleged onset date of March 20, 2014. (R. at 36.) The ALJ found that Plaintiff had the severe impairments of un-level pelvis with unequal limb length, degenerative disc disease of the lumbar spine, amputation of the right leg with reattachment, borderline intellectual functioning, depressive disorder, anxiety disorder, panic disorder, psychotic disorder, and cluster headaches. (*Id.*) The ALJ also found that Plaintiff's subdural arachnoid cyst, insomnia, GERD, and hypertension are not severe impairments, reasoning that these impairments have no more than a minimal effect on Plaintiff's ability to perform basic physical work activities. (*Id.*) He further found that Plaintiff did not have an impairment or combination of impairments that met or medically equaled one of the listed impairments described in 20 C.F.R.

---

[1] Social Security Regulations require ALJs to resolve a disability claim through a five-step sequential evaluation of the evidence. *See* 20 C.F.R. § 416.920(a)(4). Although a dispositive finding at any step terminates the ALJ's review, *see Colvin v. Barnhart*, 475 F.3d 727, 730 (6th Cir. 2007), if fully considered, the sequential review considers and answers five questions:

1. Is the claimant engaged in substantial gainful activity?
2. Does the claimant suffer from one or more severe impairments?
3. Do the claimant's severe impairments, alone or in combination, meet or equal the criteria of an impairment set forth in the Commissioner's Listing of Impairments, 20 C.F.R. Subpart P, Appendix 1?
4. Considering the claimant's residual functional capacity, can the claimant perform his or her past relevant work?
5. Considering the claimant's age, education, past work experience, and residual functional capacity, can the claimant perform other work available in the national economy?

*See* 20 C.F.R. § 416.920(a)(4); *see also Henley v. Astrue*, 573 F.3d 263, 264 (6th Cir. 2009); *Foster v. Halter*, 279 F.3d 348, 354 (6th Cir. 2001).

Part 404, Subpart P, Appendix 1.  (R. at 37.)  At step four of the sequential process, the ALJ set

forth Plaintiff's RFC as follows:

> After careful consideration of the entire record, I find that [Plaintiff] has the residual functional capacity to perform light work as defined in 20 CFR 416.967(b) except he can stand and/or walk for 3 hours at a time, but can stand and/or walk for a total of 6 hours during an 8-hour workday; can occasionally climb ramps and stairs; can never climb ladders, ropes, or scaffolds; can occasionally push, pull, and operate foot controls with his lower extremities; can occasionally balance, stoop, kneel, crouch, and crawl; would need to avoid unprotected heights, moving machinery, and vibrations; can understand,  remember, and carry-out simple tasks and job instructions; can perform only repetitive, routine tasks; could occasionally and superficially interact with co-workers and supervisors, but not interact with the general public; can respond appropriately to basic changes in the workplace; and cannot engage in work that requires strict production quotas or production-rate pace jobs, but goal-oriented work would be acceptable.

(R. at 39.)

In assessing Plaintiff's RFC, the ALJ concluded that although Plaintiff's impairments

could reasonably be expected to cause some of his alleged symptoms, Plaintiff's allegations

regarding the intensity, persistence, and limiting effects were not credible given that they were

not consistent with the record evidence.  The ALJ accorded "some weight" to the opinions of the

state agency reviewing physicians and consulting psychologists.  The ALJ reasoned that

although their opinions were consistent with the record when rendered, more recent evidence

reflected greater limitation.  (R. at 43.)  In particular, the ALJ found that the more recent

evidence supports a finding that Plaintiff required greater exertional restrictions and that he had

mild limitations in activities of daily living.  The ALJ assigned "no weight" to Plaintiff's

therapist Mr. Miller's undated opinion, pointing out that Mr. Miller is not an acceptable mental

health source and that the marked limitations he opined lack record support.  (*Id.*)  The ALJ also

noted that Mr. Miller premised his opinion on Plaintiff's self reports.  Finally, the ALJ also

assigned "no weight" to the statement from Plaintiff's girlfriend, Daisy Wilson, explaining that

Ms. Wilson is not an acceptable medical or mental health source, that she is partial due to her close relationship with Plaintiff, that she has a financial interest in the outcome of this case because she has been taking care of Plaintiff for many years, and that the issue of whether Plaintiff can work or not is an issued reserved for the Commissioner.  (*Id.*)

Relying on the VE's testimony, the ALJ found that even though Plaintiff is unable to perform his past relevant work, he can perform other jobs that exist in significant numbers in the national economy.  (R. at 43-45.)  He therefore concluded that Plaintiff was not disabled under the Social Security Act.  (R. at 45.)

## V.  STANDARD OF REVIEW

When reviewing a case under the Social Security Act, the Court "must affirm the Commissioner's decision if it 'is supported by substantial evidence and was made pursuant to proper legal standards.'"  *Rabbers v. Comm'r of Soc. Sec.*, 582 F.3d 647, 651 (6th Cir. 2009) (quoting *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007)); *see also* 42 U.S.C. § 405(g) ("[t]he findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive . . . .").  Under this standard, "substantial evidence is defined as 'more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'"  *Rogers*, 486 F.3d at 241 (quoting *Cutlip v. Sec'y of Health & Hum. Servs.*, 25 F.3d 284, 286 (6th Cir. 1994)).

Although the substantial evidence standard is deferential, it is not trivial.  The Court must "'take into account whatever in the record fairly detracts from [the] weight'" of the Commissioner's decision.  *TNS, Inc. v. NLRB*, 296 F.3d 384, 395 (6th Cir. 2002) (quoting *Universal Camera Corp. v. NLRB*, 340 U.S. 474, 487 (1951)).  Nevertheless, "if substantial

evidence supports the ALJ's decision, this Court defers to that finding 'even if there is substantial evidence in the record that would have supported an opposite conclusion.'" *Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 406 (quoting *Key v. Callahan*, 109 F.3d 270, 273 (6th Cir. 1997)).

Finally, even if the ALJ's decision meets the substantial evidence standard, "'a decision of the Commissioner will not be upheld where the SSA fails to follow its own regulations and where that error prejudices a claimant on the merits or deprives the claimant of a substantial right.'" *Rabbers*, 582 F.3d at 651 (quoting *Bowen v. Comm'r of Soc. Sec.*, 478 F.3d 742, 746 (6th Cir. 2007)).

## VI.    ANALYSIS

As set forth above, Plaintiff argues that reversal is required because (1) the ALJ did not properly evaluate the medical opinion evidence, (2) the ALJ failed to consider Plaintiff's diagnosis of paranoid schizophrenia, (3) the ALJ failed to develop the record with regard to Plaintiff's cerebral cysts, and (4) the ALJ's hypothetical question to the VE did not accurately reflect Plaintiff's limitations.  The Court finds Plaintiff's arguments to be without merit.

### A.    Weighing and Consideration of Opinion Evidence

The Court finds that the ALJ did not err in his consideration and weighing of the opinion evidence.  The ALJ must consider all medical opinions that he or she receives in evaluating a claimant's case.  20 C.F.R. § 416.927(c).  The applicable regulations define medical opinions as "statements from acceptable medical sources that reflect judgments about the nature and severity of your impairment(s), including your symptoms, diagnosis and prognosis, what you can still do despite impairment(s), and your physical or mental restrictions."  20 C.F.R. § 416.927(a)(1).

Licensed Professional Clinical Counselors like Mr. Miller, however, are not "acceptable medical sources" and instead fall into the category generally referred to as "other sources." 20 C.F.R. §§ 404.1502(a), 416.902(a). Pursuant to 20 C.F.R. § 1527(f)(2), the ALJ "generally should explain the weight given to opinions from [other sources] or otherwise ensure that the discussion of the evidence in the determination or decision allows a claimant or subsequent reviewer to follow the adjudicator's reasoning." However, "other-source opinions are not entitled to any special deference." *Hill v. Comm'r of Soc. Sec.*, 560 F. App'x 547, 550 (6th Cir. 2014) (citation omitted); *see also Cole v. Astrue*, 661 F.3d 931, 938 n.4 (6th Cir. 2011) (noting "the importance of addressing the opinion of a mental health counselor as a valid 'other source' providing ongoing care"). Social Security Ruling 06-03p, upon which Plaintiff relies, states as follows:

> Since there is a requirement to consider all relevant evidence in an individual's case record, the case record should reflect the consideration of opinions from medical sources who are not "acceptable medical sources" and from "non-medical sources" who have seen the claimant in their professional capacity. Although there is a distinction between what an adjudicator must consider and what the adjudicator must explain in the disability determination or decision, the adjudicator generally should explain the weight given to opinions from these "other sources," or otherwise ensure that the discussion of the evidence in the determination or decision allows a claimant or subsequent reviewer to follow the adjudicator's reasoning, when such opinions may have an effect on the outcome of the case.

SSR 06-3p, 2006 WL 2329939, at *6.

Here, the ALJ considered the form assessment form Mr. Miller completed, but assigned it "no weight," explaining as follows:

> The ALJ explained as follows: "I assign no weight to the therapist's opinion (Tim Miller, LPCC, date unknown, D17F/1-4). He is not an acceptable mental health source. Also, the marked limitations are not supported by the record. Additionally, he acknowledged that he based his opinion on what the claimant has told him." (*Id.*)

(R. at 43.)  The ALJ assigned "some weight" to the state agency physicians' and psychologists opinions, concluding that although the records were consistent with the record at the time rendered, subsequent evidence reflected *greater* restriction both physically and mentally.  (*Id.*)

The ALJ did not err in his consideration of Mr. Miller's undated opinion.  To begin, the ALJ was correct to evaluate Mr. Miller's opinion as an "other source" opinion, rather than as an "acceptable source" opinion.  20 C.F.R. §§ 404.1502(a), 416.902(a).  In addition, the ALJ made clear the weight he assigned and the reasons for that weight, including that the opinion is based on Plaintiff's subjective statements, which he had found to be not credible (a finding that Plaintiff does not directly challenge).  *See Truran v. Comm'r of Soc. Sec.*, No. 2:16-cv-10862, 2017 WL 4925604, at *7 (E.D. Mich. June 27, 2017) (collecting cases for proposition an ALJ may "discount[] the opinion of even a treating physician" when that opinion is premised largely upon the claimant's subjective reports).

Moreover, Plaintiff's assertion that the ALJ should have relied upon Mr. Miller's opinion to conclude that he required marked limitations reveals Plaintiff's misunderstanding of the significance of those findings on the Mental Residual Functional Capacity Assessment form Mr. Miller completed.  The Social Security Administration's Programs Operations Manual System ("POMS") clarifies that the boxes Mr. Miller checked in section one are simply part of a worksheet that "does not constitute the RFC assessment."  POMS DI § 24510.060(B)(2), *available at* https://secure.ssa. gov/apps10/poms.nsf/lnx/0424510060.  Thus, checking the boxes "Moderately Limited" or "Markedly Limited" notes only that the claimant's capacity is impaired; it does not indicate the degree and extent of the limitation.  *See id.* § 24510.063(B)(2).  Rather, the medical consultant must record "the actual mental RFC assessment" in Section III.  *Id.* at § 24510.060(B)(4).  Mr. Miller failed to identify *any* RFC limitations in Section III.

Rather, in this section, he explained that the check-the-box portion he completed was based upon Plaintiff's self-reports.

Plaintiff's assertion that the marked limitations Mr. Miller opined "are supported by the entire record" is unpersuasive. Plaintiff generally references the hearing testimony he and his long-time girlfriend offered, but the ALJ found their testimony to lack credibility, a finding Plaintiff has not challenged and which the Court finds is amply supported by substantial evidence. Plaintiff also generally references "the records" from his primary care physician, Dr. Kollengode, and his neurosurgeon, Dr. Shannon, but fails to cite to any particular record or explain how their records support marked limitations. *See McPherson v. Kelsey*, 125 F.3d 989, 996-96 (6th Cir. 1997) ("[I]ssues adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived. It is not sufficient for a party to mention a possible argument in the most skeletal way, leaving the court to . . . put flesh on its bones." (internal quotation marks and citations omitted)); *Hollon v. Comm'r of Soc. Sec.*, 447 F.3d 477, 490-91 (6th Cir. 2006) ("This challenge warrants little discussion, as Hollon has made little effort to develop this argument in her brief on appeal, or to identify any specific aspects of the Commissioner's determination that lack support in the record.").

Finally, the ALJ did not err in affording "some weight" to the opinions of the state agency reviewing physicians and psychologists. Significantly, none of Plaintiff's treating physicians offered an opinion concerning Plaintiff's RFC. In addition, the ALJ properly considered the examining relationship, the supportability of the opinions, and the consistency of the opinions with the record as a whole in weighing these opinions. *See* 20 C.F.R. § 416.927(c). And although the reviewing physicians and consultants did not have access to the entire record at the time they rendered their opinions, the ALJ properly considered the complete record and

concluded that evidence generated subsequent to the reviewers' opinions demonstrated *greater* functional limitations. *See Parrish v. Berryhill*, No 1:16-cv-1880, 2017 WL 2728394, at *8 (N.D. Ohio June 8, 2017) (collecting cases holding that an ALJ may rely on state agency evaluation that did not have access to the complete record, if the ALJ considers the complete record); (R. at 43.)

## B.    Identification of Paranoid Schizophrenia at Step Two

Plaintiff's assertion that the ALJ erred in failing "to recognize the diagnosis of paranoid schizophrenia," (Pl.'s Statement of Errors 14, ECF No. 14), lacks merit.

At step two of the sequential evaluation process, Plaintiff bears the burden of proving the existence of a severe, medically determinable impairment that meets the twelve-month durational requirement. *See Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 474 (6th Cir. 2003); *Harley v. Comm'r of Soc. Sec.*, 485 F. App'x 802, 803-04 (6th Cir. 2012). The Sixth Circuit has construed a claimant's burden at step two as "a *de minimis* hurdle in the disability determination process." *Higgs v. Bowen*, 880 F.2d 860, 862 (6th Cir. 1988). The inquiry is therefore "employed as an administrative convenience to screen out claims that are 'totally groundless' solely from a medical standpoint." *Id*. at 863 (quoting *Farris v. Sec'y of Health & Hum. Servs.*, 773 F.2d 85, 90 n.1 (6th Cir. 1985).

A severe impairment is defined as "any impairment or combination of impairments which significantly limits your physical or mental ability to do basic work activities," 20 C.F.R. §§ 404.1520(c), 416.920(c), and which lasts or can be expected to last "for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). "A severe mental impairment is 'established by medical evidence consisting of signs, symptoms, and laboratory findings, not only by [a plaintiff's] statement of symptoms.'" *Griffith v. Comm'r*, 582 F. App'x 555, 559 (6th

Cir. 2014) (quoting 20 C.F.R. § 416.908).  Thus, if no signs or laboratory findings substantiate

the existence of an impairment, it is appropriate to terminate the disability analysis.  *See* SSR 96-

4p, 1996 WL 374187, at *2 (July 2, 1996) ("In claims in which there are no medical signs or

laboratory findings to substantiate the existence of a medically determinable physical or mental

impairment, the individual must be found not disabled at step 2 of the sequential evaluation

process set out in 20 CFR 404.1520 and 416.920 . . . .").  Significantly, "[n]o symptom or

combination of symptoms by itself can constitute a medically determinable impairment."  SSR

96-4p, 1996 WL 374187, at *2 (July 2, 1996).  "[S]ymptoms" consist of a claimant's description

of his or her alleged impairment."  20 C.F.R. § 404.1528(a).  In contrast, "signs" include

"psychological abnormalities which can be observed."  20 C.F.R. § 404.1528(a)-(b).  In addition,

"[p]sychiatric signs are medically demonstrable phenomena that indicate specific psychological

abnormalities, *e.g.*, abnormalities of behavior, mood, thought, memory, orientation,

development, or perception."  20 C.F.R. § 404.1528(a)-(b).  "Laboratory findings" include

"psychological phenomena which can be shown by the use of medically acceptable laboratory

diagnostic techniques."  *Id.*  Consistently, the Sixth Circuit has advised that "[w]hen mental

illness is the basis of a disability claim, clinical and laboratory data may consist of the diagnosis

and observations of professionals trained in the field of psychopathology."  *Blankenship v.

Bowen*, 874 F.2d 1116, 1121 (6th Cir. 1989) (internal quotation marks and citations omitted).

Plaintiff bears the burden of establishing the existence of a severe medically determinable

impairment at step two.  *Griffith*, 582 F. App'x at 559.

Where the ALJ determines that a claimant had a severe impairment at step two of the

analysis, "the question of whether the ALJ characterized any other alleged impairment as severe

or not severe is of little consequence."  *Pompa v. Comm'r of Soc. Sec.*, 73 F. App'x 801, 803,

(6th Cir. 2003).  Instead, the pertinent inquiry is whether the ALJ considered the "limiting effects of all [claimant's] impairment(s), even those that are not severe, in determining [the claimant's] residual functional capacity."  20 C.F.R. § 404.1545(e); *Pompa*, 73 F. App'x at 803 (rejecting the claimant's argument that the ALJ erred by finding that a number of her impairments were not severe where the ALJ determined that claimant had at least one severe impairment and considered all of the claimant's impairments in her RFC assessment); *Maziarz v. Sec'y of Health & Hum. Servs.*, 837 F.2d 240, 244 (6th Cir. 1987) (same).

Plaintiff's contention that the ALJ erred at step two fails for a number of reasons.  First, in addition to finding that Plaintiff had the severe mental impairments of borderline intellectual functioning, depressive disorder, anxiety disorder, and panic disorder, the ALJ also identified a "psychotic disorder" as a severe impairment, and schizophrenia is a type of psychotic disorder. Second, the ALJ clearly considered all of Plaintiff's mental impairments in fashioning his mental RFC, such that any error in not including the specific diagnosis of paranoid schizophrenia would be harmless.  *See Maziarz,* 837 F.2d at 244.  Notably, Plaintiff has not articulated what particular additional limitations should have been incorporated into his RFC as a result of this specific diagnosis.  Third, Plaintiff has failed to satisfy his step-two burden to show that he suffers from the specific psychotic disorder of paranoid schizophrenia.  Rather, as the ALJ points out, the record reflects that Plaintiff self-reported to doctors that he suffered from paranoid schizophrenia.  (*See, e.g.*, R. at 363 (March 2014 progress note reflecting that Plaintiff stated: "My mother was Schizophrenic and I believe I am also.").)  Indeed, in response to Plaintiff's complaints that he is limited by paranoid schizophrenia, Mr. Miller, Plaintiff's therapist to whom he argues controlling weight should have been given, stated that, "he has never shown me signs of schizophrenia."  (R. at 673.)  Additionally, Exhibit 21F, (R. at 703), which has the notation

"this is when Paul [was] diagnosed of Paranoid Schizophrenia," only indicates repeated

diagnoses of "paranoid state unspec[.]," not paranoid schizophrenia.  The only evidence in the

record that approaches a diagnosis of paranoid schizophrenia is an impression of "severe

depression schizophrenia" by Dr. Shannon.  (R. at 469.)  As the ALJ observed, however, "it is

unclear what basis he used for this diagnosis given that he included with it [] diagnoses . . . that

were based on an MRI of [Plaintiff's] brain and [Plaintiff's] statements."  (R. at 41.)  Absent any

evidence in the record of actual diagnoses or objective findings, the Court finds that Plaintiff

failed to carry his burden of proving the severe impairment of paranoid schizophrenia.

## C.    Developing the Record

Plaintiff next maintains that the ALJ erred in failing to develop the record evidence as

related to Plaintiff's cerebral cyst.  Specifically, Plaintiff contends that the ALJ should have

ordered "a neurological consult to consider the impact of the large cerebral cyst, both from a

physical stand point (headaches) or from a mental health standpoint (the correlation between the

findings on the MRI and CT scan of [P]laintiff's brain and the diagnosis of schizophrenia."

(Statement of Errors at 15, ECF No. 14.)

The United States Supreme Court has emphasized that "Social Security proceedings are

inquisitorial rather than adversarial."  *Sims v. Apfel*, 530 U.S. 103, 110–11 (2000) (plurality).

Accordingly, "[i]t is the ALJ's duty to investigate the facts and develop the arguments both for

and against granting benefits . . . ."  *Id.* at 111.  The United States Court of Appeals for the Sixth

Circuit has long recognized the ALJ's duty to fully develop the record through "a full and fair

hearing."  *Lashley v. Sec. of Health and Human Serv.*, 708 F.2d 1048, 1051-52 (6th Cir. 1983)

(recognizing a "special duty" to develop the record in the context of an unrepresented inarticulate

claimant).  The *Lashley* Court cautioned, however, that "the administrative law judge must not become a partisan and assume the role of counsel."  *Id.* at 1051.

In this case, Plaintiff was represented by counsel at the administrative hearing, thus the *Lashley* "special duty" standard does not apply.  Further, even if Plaintiff were unrepresented, "[n]othing in *Lashley* requires the ALJ to conduct an independent investigation of a claimant's medical condition outside the courtroom."  *McKenzie v. Comm'r of Soc. Sec.*, No. 13-CV-11272, 2014 WL 4793884, at *3 (E.D. Mich. Sept. 25, 2014).  Significantly, in this case, the record contains medical evidence relating to Plaintiff's cerebral cyst, including imaging studies and related diagnoses.  (*See, e.g.*, R. at 411, 433, and 468.)  That the record does not contain additional medical opinions documenting the effect of Plaintiff's cysts in addition to the existing objective evidence does not compel the ALJ to order a consultative examination.  Indeed, there is nothing to suggest that the ALJ's failure to order a consultative exam prejudiced Plaintiff, let alone denied him a full and fair hearing.  And, as discussed above, the burden of proving disability rests with Plaintiff, not with the ALJ.  *See, e.g.*, *Wilson v. Comm'r of Soc. Sec.*, 280 F. App'x 456, 459 (6th Cir. 2008) (citing 20 C.F.R. § 404.1512(a)); *Struthers v. Comm'r of Soc. Sec.*, 1999 WL 357818, at *2 (6th Cir. May 26, 1999) ("[I]t is the duty of the claimant, rather than the administrative law judge, to develop the record to the extent of providing evidence of [an] impairment."); *Landsaw v. Sec'y of Health & Hum. Servs.*, 803 F.2d 211, 214 (6th Cir. 1986) ("The burden of providing a complete record, defined as evidence complete and detailed enough to enable the Secretary to make a disability determination, rests with the claimant." (citations omitted)).  Plaintiff's argument that the ALJ erroneously failed to develop the record is therefore not well taken.

**D.     Reliance on the VE's Testimony**

Finally, Plaintiff contests the validity of the hypothetical question posed to the VE, which elicited testimony to the effect that Plaintiff retained sufficient residual capacity to perform a significant number of jobs.  Specifically, Plaintiff contends that the ALJ erred in relying on the VE's testimony because the hypothetical question failed to accurately reflect Plaintiff's RFC.

When the ALJ determines that a claimant cannot perform his or her past relevant work, the burden shifts to the Commissioner to prove that the claimant has the capacity to perform other work.  20 C.F.R. § 404.1560(c)(2).  To meet its burden, "the Commissioner must make a finding 'supported by substantial evidence that [the claimant] has the vocational qualifications to perform specific jobs.'"  *Howard v. Comm'r of Soc. Sec.*, 276 F.3d 235, 238 (6th Cir. 2002) (quoting *Varley v. Sec'y of Health & Hum. Servs.*, 820 F.2d 777, 779 (6th Cir. 1987)).  "In order for a vocational expert's testimony in response to a hypothetical question to serve as substantial evidence in support of the conclusion that a claimant can perform other work, the question must accurately portray a claimant's physical and mental impairments."  *Ealy v. Comm'r of Soc. Sec.*, 594 F.3d 504, 516 (6th Cir. 2010).  Plaintiff argues that "the hypothetical questions that the ALJ posed to the VE did not completely describe [his] physical or mental abilities."  (Pl.'s Statement of Errors 17, ECF No. 14.)

The undersigned finds that the ALJ's hypothetical question incorporated all of the limitations the ALJ found credible and supported by the evidence and, therefore, was proper.  In formulating the hypothetical, an ALJ is only "required to incorporate those limitations accepted as credible by the finder of fact."  *Casey v. Sec'y of Health & Human Servs.*, 987 F.2d 1230, 1235 (6th Cir. 1993).  Here, the ALJ concluded that Plaintiff was limited to a significantly reduced range of light work, and his hypothetical questions to the VE incorporate the limitations

he ultimately found credible and assessed in the RFC. (*See* R. at 39.) Because Plaintiff fails to identify other evidence supporting additional RFC restrictions that the ALJ found credible, his challenges to the ALJ's reliance on the VE's testimony likewise lack merit.

## VII. DISPOSITION

In sum, from a review of the record as a whole, the Court concludes that substantial evidence supports the ALJ's decision denying benefits. Accordingly, Plaintiff's Statement of Errors is **OVERRULED**, and the Commissioner of Social Security's decision is **AFFIRMED**.

**IT IS SO ORDERED**.

/s/ *Chelsey M. Vascura*
CHELSEY M. VASCURA
UNITED STATES MAGISTRATE JUDGE